UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| TEAMSTERS LOCAL UNION NO. 25, ) | |
| INTERNATIONAL BROTHERHOOD ) | |
| OF TEAMSTERS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 12-11961-DJC |
| XPEDX; ) | |
| TOWN OF WILMINGTON; and ) | |
| MICHAEL BEGONIS, as Chief of Police of Town ) | |
| of Wilmington, ) | |
| Defendants. ) | |
| ) | |

## ANSWER AND COUNTERCLAIM
## OF DEFENDANT XPEDX

xpedx, an unincorporated division and d/b/a of International Paper Company, hereby

answers the Complaint and Request for Injunctive Relief (the "Complaint") (Dkt. #1) of

plaintiff Teamsters Local Union No. 25, International Brotherhood of Teamsters ("Local

25") by corresponding paragraph numbers as follows:

1.     This paragraph states contentions of law to which no response is required.  To

the extent factual allegations are asserted therein, xpedx denies same.

2.     Upon information and belief, xpedx admits the allegations in this paragraph.

3.     Admitted.

4.     Upon information and belief, xpedx admits the allegations in this paragraph.

5.     Upon information and belief, xpedx admits the allegations in this paragraph.

6.     This paragraph is a statement of jurisdiction to which no response is required.

To the extent factual allegations are asserted therein, xpedx denies same.

7.     Admitted.

8.      Admitted.

9.      Admitted.

10.     This paragraph states contentions of law to which no response is required.  To the extent factual allegations are asserted therein, xpedx denies same.

11.     Denied.

12.     In response to the allegations of Paragraph 12, xpedx admits that starting on or about October 1, 2012, it agreed to hire a police detail in an effort to control the actions of the Local 25 picketers at the entrance to xpedx's Wilmington facility.  Since that time, there has been a paid police detail consisting of approximately eight officers per shift, for twenty-four hours per day, Monday through Friday, and approximately five officers per shift, for twenty-four hours per day, Saturday and Sunday, at the picket line at the facility. xpedx denies any remaining allegations in this paragraph.

13.     The allegations in this paragraph are not directed at xpedx.  To the extent a response is deemed required, xpedx lacks sufficient information to admit or deny the allegations in this paragraph.

14.     The allegations in this paragraph are not directed at xpedx.  Moreover, this paragraph states contentions of law to which no response is required.  To the extent a response is deemed required, xpedx lacks sufficient information to admit or deny the allegations in this paragraph.

15.     Denied.

16.     The allegations in this paragraph are not directed at xpedx.  To the extent a response is deemed required, xpedx lacks sufficient information to admit or deny the allegations in this paragraph.

A/75236479.8

17.     The allegations in this paragraph are not directed at xpedx.  To the extent a response is deemed required, xpedx lacks sufficient information to admit or deny the allegations in this paragraph.

18.     Denied.

19.     The allegations in this paragraph are not directed at xpedx.  To the extent a response is deemed required, xpedx lacks sufficient information to admit or deny the allegations in this paragraph.

20.     In response to the allegations in this paragraph, xpedx states that the Massachusetts Municipal Police Institute's Policy and Procedures Guidelines (the "MPI Guidelines") speaks for itself.

21.     In response to the allegations in this paragraph, xpedx states that the MPI Guidelines speaks for itself.

22.     Denied.  In further response to the allegations in this paragraph, xpedx states that the MPI Guidelines are not binding and do not carry the force of law.

### COUNT ONE
### 42 U.S.C. § 1983
### (Town of Wilmington)

23–25. The allegations in these paragraphs are not directed at xpedx.  To the extent a response is deemed required, xpedx denies the allegations in these paragraphs.

### COUNT TWO
### 42 U.S.C. §§ 1983 & 1985
### (Town of Wilmington and xpedx)

26.     xpedx repeats and realleges the foregoing paragraphs as if fully incorporated herein.

27.     Denied.

28.     Denied.

## AFFIRMATIVE DEFENSES

### First Defense

The Complaint fails to state a claim upon which relief can be granted against xpedx because, among other things, neither the National Labor Relations Act nor the United States Constitution furnishes a right to block ingress and egress as part of labor picketing.

### Second Defense

Any harm suffered by plaintiff resulted from its own acts or omissions or those of third parties for whom xpedx is not responsible.

### Third Defense

Plaintiff's claims are barred by its own unlawful acts.

### Fourth Defense

Plaintiff's claims are barred by the doctrines of laches, waiver, estoppel, and unclean hands.

### Fifth Defense

Plaintiff has failed to exhaust administrative remedies.

### Sixth Defense

xpedx currently has insufficient knowledge or information as to whether it may have additional, as yet unstated, defenses available.  xpedx expressly reserves its right to assert additional affirmative defenses in the event discovery indicates they would be appropriate.

A/75236479.8

**COUNTERCLAIM**

## I.    <u>Introduction</u>

xpedx brings this counterclaim for damages suffered as a result of the misconduct by Local 25 and its agents in connection with a labor dispute between the parties and for other relief.  Local 25, through its unlawful picketing and other illegal activities, has engaged in threats, intimidation, coercion, harassment, and destruction of property constituting a number of torts, as well as violations of the Massachusetts Civil Rights Act and the Massachusetts Consumer Protection Statute.

## II.    <u>Parties</u>

1.    Plaintiff-in-Counterclaim, International Paper Company d/b/a xpedx ("xpedx"), is a corporation organized under the laws of the state of New York with a principal place of business in Memphis, Tennessee.  xpedx is the leading business-to-business distributor of packaging, facility, and printing supplies in North America.  xpedx operates a facility at 613 Main Street in Wilmington, Massachusetts (the "Facility").

2.    Defendant-in-Counterclaim, Local 25, is a voluntary unincorporated association and labor organization affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO.  Local 25 maintains an office at 544 Main Street, Boston, Massachusetts 02129.

## III.    <u>Factual Background</u>

### A.    <u>The Labor Dispute Between xpedx and Local 25.</u>

3.    xpedx has developed valuable good will and customer relationships over many years as a result of its prompt, efficient, and satisfactory service to its customers.

A/75236479.8

4.      At midnight on September 30, 2012, the collective bargaining agreement between xpedx and Local 25 expired.  At about 1 p.m. on October 1, 2012, Local 25 and its members commenced a labor strike against xpedx at the Facility (the "Strike").

5.      Contemporaneous with the start of the Strike, Local 25, through its officers, stewards, members, and others associated and acting in concert with them (collectively, "Members"), began picketing at and near the entrance to the Facility.  Since its inception, the picketing has been continuous -- 24 hours a day, 7 days a week.

6.      Beginning on or about October 1, 2012, and continuing to date, Local 25 Members have engaged in the following misconduct:

(a)      congregating in great numbers at the entrance to the Facility and intentionally obstructing and impeding vehicles attempting to enter or exit the Facility;

(b)      intimidating, coercing, and threatening the drivers in both xpedx and personal vehicles;

(c)      intimidating, coercing, and threatening xpedx's non-striking employees, persons having business relations with xpedx, and others with physical violence;

(d)      sexually harassing xpedx's non-striking employees; and

(e)      destroying personal property by, among other things, cutting the airlines/hoses on xpedx trucks and slashing all of the tires on four vehicles rented by a private security firm hired by xpedx.

7.      Upon information and belief, this misconduct is consistent with and reminiscent of Local 25's resort to threats, intimidation, coercion, and destruction of property in connection with a 2003 labor strike with xpedx.

8.      As a result of the unlawful mass picketing by Local 25 and its Members, xpedx's employees and others using the Facility have not been permitted to freely enter or exit the

Facility and have been subjected to intimidation, coercion, sexual harassment, and threats of violence.

9.      Continuation of this unlawful activity has caused and will continue to cause harm to xpedx because obstructing ingress to and egress from the Facility prevents xpedx from fully executing its delivery and other business obligations, providing complete services to its customers, and ensuring the safety of its employees, vendors, and customers.

10.      On or about October 1, 2012, the Wilmington Police Department advised xpedx that the police could not control the picketing at the Facility with on-duty police officers and, to ensure safety and unimpeded ingress to and egress from the Facility, the police requested that xpedx immediately hire a paid police detail of off-duty officers.

11.      Since October 1, 2012, a police detail (hired and paid for by xpedx) has been working at the Facility 24 hours a day, 7 days a week.  Initially, the police began with detail of 4 officers, but later raised that to 8 as the Strike progressed.  During the period of Monday through Friday, the number of paid officers working is 8.  On Saturday and Sunday, the number is 5.

12.      Because of the extent of the unlawful activity, and as a compliment to the paid police detail, xpedx also hired a private security firm to provide security services at the Facility. Since October 2, 2012, the security firm has been working 24 hours per day, 7 hours per week.

**B.      Picketers Unlawfully Block and Detain Vehicles Entering/Leaving the Facility.**

13.      At approximately 1 p.m. on October 1, 2012, the Local 25 members of xpedx walked off the job.  Upon information and belief, shortly thereafter the Wilmington Police received a call from a business neighboring the Facility reporting a disturbance in the parking lot resulting from the Local 25 picketers who were obstructing traffic.

A/75236479.8

14.     The access to the Facility is via a private driveway off of Route 38.  xpedx has an easement pursuant to which it has the right to use and control the private driveway.

15.     At the outset of the Strike and the commencement of picketing, whenever Local 25 picketers saw a vehicle attempting to enter or exit the private driveway to the Facility, they would swarm the vehicle on the driveway, blocking its movement entirely.  The picketers would continue to march around and in front of the vehicle, shouting obscenities and physical threats at the vehicle's occupants.  Only after the police intervened and directed the picketers to move aside were the vehicles able to enter and exit.

16.     On October 4, 2012 at approximately 9 a.m., a 79-year-old, third-party driver sought to enter the Facility with an 18-wheel tractor trailer by pulling off of Route 38 and onto the driveway where Local 25 Members were picketing.  As the police sought to have the driver stop with the picketers both in front of and very close along the sides of the tractor trailer, the driver drove forward through the picket line and into the Facility.  Fortunately, no one on the picket line was injured.  The driver was subsequently charged with various offenses.

17.     Subsequent to this incident, the police moved the Local 25 picket line off the private driveway and restricted it to the public right of way along Route 38 in front of the private driveway.

18.     As each vehicle seeks to enter or exit the property, the police have generally allowed the picketers to walk in front of the vehicle, thus blocking its ingress or egress, while the picketers yell profanity-laden insults at the vehicle's occupants.

19.     But for the presence and eventual intervention of the paid police detail, Local 25 and its Members would block ingress to and egress from, and detain vehicles seeking to enter or exit, the Facility.

20. As a result of the picketers' unlawful conduct, which continues to date, non-striking workers, third parties doing business with xpedx, and members of the general public seeking to enter or exit the Facility have been purposely detained by Local 25 picketers.

21. As a result of the picketers' unbridled verbal and physical threats, sexual harassment, and intimidation, xpedx employees, particularly female employees, have complained to xpedx management and report feeling threatened and unsafe.   Others have been in tears following their experiences on the picket line.   xpedx has retained an Employee Assistance Counselor to assist its employees and help them deal with the fear and emotional distress caused by the conduct of the Local 25 picketers.

22. Examples of the threats, harassment, intimidation, and other unlawful conduct by Local 25 and its Members include:

(a) On October 2, 2012 at approximately 12:30 p.m., a tractor trailer pulled up to the entrance of the Facility.  The police stopped the vehicle, at which point the picketers began marching in a circle in front of it while shouting insults and obscenities at its driver.  One of the picketers yelled to the driver, "Your mother is a whore!  Your mother is a cunt!  I'm gonna fuck your mother in her ass!"  After nearly two minutes of continuous picketing and harassment, the police finally intervened and ordered the picketers to move aside so that the vehicle could enter.

(b) Later that evening, at approximately 6:18 pm, a passenger vehicle attempted to leave the Facility.  When the police stopped the vehicle at the picket line, the picketers started marching in front of the vehicle and calling its driver a "fucker!" and "cocksucker!" among other insults.  After almost a full minute, the police finally stepped in and cleared a path for the vehicle.  As the vehicle passed through the picket line, a picketer came up to the passenger side of the vehicle and punched the side mirror, slamming it against the side of the car.

(c) On October 3, 2012, at approximately 8:17 a.m., a tractor trailer attempted to enter the Facility.  Once again, the police stopped the vehicle at the picket line with the picketers marching in front of the vehicle and shouting at its driver obscenities like "fuck you!" and "fucking asshole!"  One picketer gestured repeatedly to the driver by dragging his thumb across his

throat.  This continued for nearly two minutes before the Police intervened and escorted the vehicle through the picket line.

(d)     About ten minutes later, a white passenger vehicle attempting to exit the Facility was forced to stop at the picket line.  In addition to the insults and obscenities directed to other drivers and non-striking employees, the picketers shouted at the driver, an African-American woman, "here comes Oprah!"; "my fucking Pomeranian Chihuahua looks better than you!"; "how do you eat your corn?! The long way?!"; and "is that how you worked the pole last night?!"  The driver of this vehicle was forcibly subjected to these insults and racial slurs for more than a minute before the police intervened to clear a path so she could leave.

(e)     On October 8, 2012, at approximately 8:53 a.m., as a box truck was exiting the Facility the picketers shouted at the driver, repeatedly calling him a "scumbag!" and "faggot!"  One of the picketers walked up to the passenger side window of the vehicle and yelled at the driver, "You fuck, I'm coming to your fucking house! I'm coming to your fucking house!"

(f)     On October 26, 2012, one of the picketers specifically threatened a non-striking employee as he passed through the picket line by telling him that the picketers would be at his house on Halloween.

(g)     Local 25 picketers have sought to intimidate, coerce and harass non-striking female workers seeking to pass through the picket line by repeatedly calling them "bitch," "cunt," and telling them that "we know where you live."

(h)     Local 25 picketers have sought to intimidate, coerce and harass non-striking workers who picketers believe to be homosexual with taunts and slurs.

**C.**     **Local 25 Destroys xpedx's Personal Property.**

23.     On or about October 1, 2012, the first day of the Strike, when Local 25 (or its Members) abandoned the vehicles to which they were assigned, four of the trucks operated by xpedx were found to have the airlines to the brakes cut.  Three of the trucks were found abandoned by their Local 25 drivers near the Stop & Shop Supermarket at 2 Elm Street in Woburn, Massachusetts.  Police reports were filed regarding this damage.

24.     On or about October 3, 2012, a truck owned by xpedx was making a customer delivery in Taunton, Massachusetts.  Local 25 Members followed the xpedx truck, and during the delivery there was an altercation where the Local 25 Members pushed the xpedx employee. While the delivery was being made, the truck was discovered to have a gouge in one tire and a screw in another.  Upon information and belief, Local 25 Members intentionally damaged the tires.

25.     Local 25 Members have also placed pad locks on the trailers of trucks passing through the picket lines.

26.     On or about October 5, 2012, in the parking lot of the Hilton Hotel in Woburn, Massachusetts, Local 25 Members slashed the tires on four vans rented by the private security firm hired by xpedx.  A copy of the police report from the Woburn Police Department confirming that a vehicle identified by a witness as being driven by the perpetrators was registered to Local 25 is attached hereto as Exhibit A.

### D.     Local 25 Members Harass xpedx Customers and Interfere with Customer Deliveries.

27.     On or about October 2, 2012, Local 25 President Sean M. O'Brien sent a voicemail blast that stated:  "This is a message from Sean O'Brien, President of Local 25 Teamsters, to all xpedx customers.  This is to inform you that you will not be receiving your product from xpedx as we are in a labor dispute . . . ."

28.     On or about October 3, 2012, Local 25 Members followed an xpedx truck on a delivery to Union Office Supply in Wilmington.  The Local 25 Members blocked the truck as it was trying to leave, necessitating that the police be called.  Later that morning, the same Local 25 Members continued to follow the truck, and at subsequent deliveries, unplugged the pallet jack and locked the truck with the keys inside.

29.     On or about October 4, 2012, Local 25 Members followed an xpedx truck to a customer location, entered onto the customer's property, and videotaped the drivers.   The customer intervened and ordered the Local 25 Members off the property.

30.     On or about October 5, 2012, Local 25 Members visited Lancelot Janitorial and Paper Products in Lynn, Massachusetts, an xpedx customer, and harassed and intimidated the owner's young employee.

31.     On or about October 8, 2012, at Ameridose in Westborough, Massachusetts, Local 25 Members were waiting outside the business when an xpedx truck arrived.   Local 25 Members blocked the truck's access to the property by setting up picket lines in front of all entrances, with 4–5 picketers at each entrance.   Ameridose was required to call the local police, who arrived approximately ten minutes later and needed to escort the xpedx truck onto the property.

32.     On or about October 17, 2012, when an xpedx delivery truck arrived at a customer in Woburn, Massachusetts, it found 3 Local 25 picketers blocking the entrance to the customer's facility.   The delivery truck was forced to remain on the street, unable to enter the premises until the police arrived and required the picketers to move and allow the xpedx to enter.

33.     On or about October 24 and 25, 2012, Local 25 Members appeared, uninvited, at Ameridose's facility at a time when xpedx was not making deliveries, asking when Ameridose was going to accept xpedx deliveries.

34.     On or about October 25, 2012, while an xpedx truck made a customer delivery in downtown Boston, Local 25 Members lying in wait harassed the xpedx drivers and created a disturbance conspicuous enough to cause the customer to complain to xpedx.

**E.**     **Local 25 Ignores xpedx's Early Efforts to Resolve Unlawful Picketing.**

35.     On October 4, 2012, xpedx delivered by hand a letter to Local 25, with a copy to Michael R. Begonis, the Wilmington Chief of Police, concerning the conduct of the Local 25 picketing.  Pursuant to that letter xpedx sought an agreement that any picketing by Local 25 would be peaceful and lawful so that it would not be necessary for xpedx to hire a paid police detail.

36.     In that letter, xpedx informed Local 25 that it was conducting unlawful picketing by, among other things, blocking ingress to and egress from the Facility; demanded that Local 25 cease its illegal activity; and stated that lawful and peaceful picketing should not require a paid police detail.  xpedx specifically requested that Local 25 stipulate to guidelines that would alleviate the need for xpedx to incur the cost of hiring a 24/7 paid police detail.  A true and accurate copy of that letter is attached hereto as Exhibit B.

37.     Specifically, xpedx asked Local 25 to stipulate and agree that:  "[o]nly one picket line, on the side of Route 38 at the beginning of the private roadway leading to the [Facility] will be maintained[;] [n]o more than 3 pickets will be on or at the picket line[;] [t]he pickets on the picket line will at all times act in a peaceful and nonviolent manner[;] [t]he pickets on the picket line will refrain from all unlawful acts, including, but not limited to, preventing egress from or ingress to the [Facility], or in any manner delaying egress from or ingress to the [Facility][;] [t]he pickets may not stop vehicles even temporarily[;] [t]he area where the pickets can march or picket, in single file, is limited to the side of Route 38 at the beginning of the roadway leading to the facility[;] Local 25 and its members will refrain from any unlawful acts or conduct directed at xpedx property, no matter where such property is located[;] Local 25 shall identify one of more persons who are to be designated as strike or picket line "captains." . . . [;] and [a]ny

ambulatory picketing will be done in accordance with the law; pickets will not impede ingress or egress from any site and will not attempt to dissuade anyone from entering a site." *See* <u>Exhibit B</u> (emphasis added).

38.     xpedx proposed these specific guidelines at least in part because Local 25 had previously agreed to such guidelines in the case of *Overnite Transp. Co. v. Teamsters Local Union 25, et al.*, Civ. A. No. 99-12493-REK (D. Mass.), another labor dispute involving Local 25.

39.     Although it received xpedx's letter on October 4, 2012, Local 25 neither responded to the letter nor attempted to conform its Members' conduct to the law and xpedx's proposed guidelines.

40.     As a result, xpedx was forced to implement several security measures it had hoped and attempted to avoid, including the 24/7 paid police detail.

41.     On October 22, 2012, Local 25 filed its Complaint seeking a court order authorizing it and its Members to block ingress to and egress from the Facility and to detain and restrain against their will non-striking workers, third parties, and the general public.

**F.     <u>The Injury and Damage Being Suffered By xpedx.</u>**

42.     As a direct result of the unlawful actions described above, xpedx is suffering and will continue to suffer permanent damage and injury by losing the benefit of the services of its employees and the business of its customers; the interference with the services of suppliers, contractors, and invitees who are entitled to free and safe ingress to and egress from the Facility; losing the benefit of the free and unimpeded use of the Facility, resulting in dissatisfied customers, damage to xpedx goodwill, and the permanent loss of customers to competitors; and by lost or reduced business volumes, revenue, and profit.

A/75236479.8

43.     xpedx has incurred, and will continue to incur, significant monetary damages because of the need for xpedx to continue to pay for a police detail and private security personnel to protect its employees and property and to ensure free and unimpeded access to and from the Facility.

44.     If the unlawful acts and conduct of Local 25 and its Members continue, xpedx will, as a result thereof, be forced to continue to pay for a police detail and be deprived of the right to conduct not only its own business, but also business with other persons lawfully entitled to be upon xpedx property, and will be deprived of the goods and services of employees and customers as well as suppliers, contractors, and invitees lawfully entitled to be at the Facility, and will likely suffer further physical injuries and property damage.

## COUNT I
## Unlawful Picketing

45.     xpedx repeats and realleges the facts contained in the preceding paragraphs and incorporates them herein by reference.

46.     During the course of the strike, Local 25 and its Members have committed, and continue to commit, intentional and unprivileged acts against the employees and property of plaintiff, including blocking ingress and egress to the Facility such that xpedx has had to hire a 24/7 paid police detail.

47.     By letter delivered on October 4, 2012, xpedx requested that Local 25 agree to certain conditions, so that a paid police detail would not be needed, to which Local 25 ignored and refused.

48.     At all times relevant, Local 25 Members were acting as agents of Local 25, and their intentional and unprivileged acts were authorized or ratified by Local 25.

49.     As a direct result of the intentional and unprivileged acts committed by Local 25 and its Members, xpedx has suffered a compensable economic loss, including but not limited to the cost to xpedx of hiring a paid police detail and a private security firm to protect its property, employees, and invitees and to try to ensure safe, free, and unhindered ingress and egress to and from the Facility.

## COUNT II
## Intentional Interference
## with Contractual Rights

50.     xpedx repeats and realleges the facts contained in the preceding paragraphs and incorporates them herein by reference.

51.     Local 25, by and through its Members' unlawful activities, has intentionally interfered with the contractual rights of xpedx.  As a direct result of said unlawful activities, xpedx has been and will continue to be unable to entirely fulfill and perform its contracts or provide necessary services to its customers.

52.     At all times relevant, Local 25 Members were acting as agents of Local 25, and their intentional and unprivileged acts were authorized or ratified by Local 25.

53.     As a direct result of Local 25 and its Members' intentional and improper interference, xpedx has suffered substantial damage and compensable economic loss.

## COUNT III
## Intentional Interference with
## Advantageous Business Relationships

54.     xpedx repeats and realleges the facts contained in the preceding paragraphs and incorporates them herein by reference.

55.     Local 25, by and through its Members' unlawful activities, has intentionally interfered with the business relationships of xpedx.  As a direct result of said unlawful activities,

A/75236479.8

xpedx was unable to entirely fulfill the requirements and expectations of those business relationships or provide necessary services to its customers.

56.     At all times relevant, Local 25 Members were acting as agents of Local 25, and their intentional and unprivileged acts were authorized or ratified by Local 25.

57.     Local 25, by and through its Members, had knowledge of xpedx's business relationships.

58.     As a direct result of Local 25 and its Members' intentional and improper interference, xpedx has suffered substantial damage and compensable economic loss.

### COUNT IV
### Violation of the Massachusetts
### Civil Rights Act (M.G.L. c. 12, § 11I)

59.     xpedx repeats and realleges the facts contained in the preceding paragraphs and incorporates them herein by reference.

60.     Local 25, by and through its Members' unlawful activities, has interfered or attempted to interfere by means of threats, intimidation, and coercion with enjoyment by xpedx of rights secured by the Constitution or laws of the United States, or by the Constitution or laws of the Commonwealth of Massachusetts, including the right to enjoyment and use of property and to conduct a lawful business.

61.     At all times relevant, Local 25 Members were acting as agents of Local 25, and their intentional and unprivileged acts were authorized or ratified by Local 25.

62.     As a direct result of Local 25 and its Members' conduct, xpedx has been denied the peaceable exercise and enjoyment of those rights and has suffered substantial damage and compensable economic loss, including the costs associated with hiring a paid police detail and

private security firm in order to attempt to provide safe and free ingress to and egress from the Facility for employees and others having business with xpedx.

## COUNT V
### Violation of the Massachusetts
### Consumer Protection Act (M.G.L. c. 93A)

63.     xpedx repeats and realleges the facts contained in the preceding paragraphs and incorporates them herein by reference.

64.     Local 25, by and through its Members' violence, coercion, threats, intimidation, and unlawful activities, has engaged in unfair and deceptive practices against xpedx in violation of M.G.L. c. 93A.

65.     Local 25 is an entity engaged in trade or commerce in the Commonwealth of Massachusetts.

66.     At all times relevant, Local 25 Members were acting as agents of Local 25, and their intentional and unprivileged acts were authorized or ratified by Local 25.

67.     The acts complained of herein occurred primarily and substantially within the Commonwealth of Massachusetts.

68.     As a direct result of Local 25 and its Members' unfair and deceptive practices, xpedx is threatened with economic and property loss, as well as other injury, and its contractual relationships with its employees and customers have been interfered with.  xpedx has incurred damages, including the costs associated with hiring a paid police detail and private security firm in order to attempt to provide safe and free ingress to and egress from the Facility for employees and others having business with xpedx.

## COUNT VI
## <u>Intentional Destruction of Property</u>

69.     xpedx repeats and realleges the facts contained in the preceding paragraphs and incorporates them herein by reference.

70.     Local 25, by and through its Members, has intentionally and maliciously destroyed property belonging to xpedx.

71.     At all times relevant, Local 25 Members were acting as agents of Local 25, and their intentional and unprivileged acts were authorized or ratified by Local 25.

72.     As a direct result of the intentional destruction of property by Local 25 and its Members, xpedx has suffered a compensable economic loss.

**WHEREFORE**, xpedx prays that this Court enter judgment against Local 25 and grant the following relief:

A.     Award xpedx its actual damages;

B.     Award xpedx treble damages in accordance with M.G.L. c. 93A;

C.     Award xpedx its costs, expenses, and reasonable attorneys' fees in accordance with M.G.L. c. 12, § 11I and c. 93A; and

D.     Award such other and further relief as this Court deems just and proper.

**XPEDX DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

Respectfully submitted,

**INTERNATIONAL PAPER COMPANY d/b/a XPEDX,**

By its attorneys,


 */s/ John R. Skelton*
John R. Skelton, BBO# 552606
   john.skelton@bingham.com
John F. Adkins, BBO# 012580
   john.adkins@bingham.com
Caleb J. Schillinger, BBO #676592
   caleb.schillinger@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110-1726
617.951.8000

Dated:  October 31, 2012

A/75236479.8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 31, 2012.

 _/s/ John R. Skelton_
John R. Skelton

A/75236479.8