BINGHAM

John F. Adkins
Direct Phone: +1.617.951.8551
john.adkins@bingham.com

October 3, 2012

**VIA HAND DELIVERY**

Sean M. O'Brien
President/Principal Officer
Teamsters Local 25 Boston, MA
544 Main Street
Charlestown, MA  02129-1113

**Re:    xpedx/WILMINGTON STRIKE**

Dear Mr. O'Brien:

    We represent xpedx in connection with the ongoing labor strike and picketing
activities being conducted by Teamsters Local 25 ("Local 25") at xpedx's facility at 613
Main Street, Wilmington, Massachusetts.

    We understand that Local 25 has established a picket line at the Wilmington facility
off of Route 38 at the roadway entrance (a private road) to the xpedx facility.  We also
understand that when a vehicle seeks to enter or exit the vehicle the picketers start
marching in a circle in front of the truck in order to block its egress. The picketers
continue to circle in front of the vehicle blocking its movement until the police step in to
create a path.  If not for the police intervention to separating the picketers and forcing
them to the side of the roadway, the vehicle would not be able to enter or leave.  At 5:50
pm, October 2, a picketer scratched both doors of a car , on the passenger's side, back to
the right rear wheel well (probably with a key) after the police had motioned for the car
to proceed; the air lines on several trucks were cut on October 1st when the drivers
abandoned their vehicles; and the pickets are placing locks on the back of trucks as they
leave the facility, so that the driver has to break the lock in order to access the back of the
truck.

    This conduct is unlawful and must cease.  The union has no right to block  ingress to
or egress from the facility, even temporarily.  Such conduct is coercive and violates
National Labor Relations Act.  In *United Parcel Service, Inc. v. Local 25, International
Brotherhood of Teamsters*, 421 F. Supp. 452, 459 (D. Mass. 1976), the United States
District Court expressly ruled that Local 25 pickets could not lawfully block ingress or
egress even temporarily, and enjoined Local 25 from "[o]bstructing, impeding or
otherwise hindering plaintiff's customers or employees or any other person from entering
or leaving at will the plaintiff's center." (Emphasis added).

    The roadway where the second picket line is currently located is a private road
(xpedx has an easement for access to its facility).  We seriously doubt that the  landowner
has consented to Local 25 using the private roadway to engage in unlawful picketing.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
One Federal Street
Boston, MA  02110-1726

+1.617.951.8000
+1.617.951.8736
bingham.com

A/75211339.1

Sean M. O'Brien
October 3, 2012
Page 2

Further, interference with or disruption to local third party businesses in the area is a concern and should be minimized.

As you know, Local 25 does not have the legal right to do anything more than peaceful picketing. Mass picketing which blocks free movement, acts of violence or threats of violence are unlawful and do not constitute protected picketing activities. We call on Local 25 leaders to instruct the strike or picket line captains and all of its members picketing at the Wilmington xpedx facility that threats, acts of violence, and blocking traffic are illegal. Of course, such conduct is good cause for the issuance of an injunction. We ask that you confirm that there will be no more unlawful acts while the parties work to resolve their dispute.[1]

The unlawful picketing is actionable and entitles xpedx to recover from Local 25, for example, any costs associated with police details, private security, etc. Indeed, a party is liable if the party causes performance to be more expensive or burdensome. xpedx has a protected interest in assuring its employees, suppliers, customers and invitees of safe and non-coercive passage into and out of its facility. *See Charles D. Bonanno Linen Service, Inc. v. McCarthy*, 532 F.2d 189, 190-91 (1st Cir. 1976); *United Parcel Service*, 421 F. Supp. at 458-60. Local 25 cannot use a threat of violence or improper picketing as a means to force xpedx to incur police and security costs.

There should be no need for continual police presence at the Wilmington facility, especially a paid police detail. So long as the picketing is conducted in a lawful and non-violent manner, there is no need for a prophylactic police presence. We have copied the Wilmington Police Department on this letter so that they will know what constitutes peaceful and permitted picketing and will be aware of the request by xpedx that Local 25 confirm that the picketing will be conducted lawfully and peacefully.

In order to avoid any disputes, to alleviate any need for a paid police detail and to avoid unnecessary harm, xpedx requests that Local 25 confirm that at all times it and its members will refrain from any unlawful acts in connection with the picketing, including, specifically, any interference with or causing any delay with the egress from or ingress to the Wilmington facility. To do so, we request that Local 25, as it did in the *Overnite Transportation Co. vs. Teamsters Local Union 25, et al,* D. Ma. 99 CV 12493 REK, confirm the following with respect to the picketing in Wilmington and that it will instruct its strike captains and its striking members accordingly:

1. Only one picket line, on the side of Route 38 at the beginning of the private roadway leading to the xpedx facility at 613 Main Street, Wilmington, Mass., will be maintained.

---

[1] xpedx is mindful of reported acts of violence by Local 25 at previous strikes. For example, in *The United Parcel Service, Inc.*, the Court found that Local 25 had engaged in concerted acts of violence, which were "unprovoked, flagrant, and dangerous to plaintiffs customers and to the police." 421 F. Supp. at 458-60. In *Charles D. Bonanno Linen Service, Inc. v. McCarthy*, 532 F.2d 189, 190-91 (1st Cir. 1976) (*Bonanno Linen I*), the First Circuit affirmed injunctive relief against Local 25 because there was ample evidence of "mass picketing, physical assault, window breaking, tire slashing, blocking of plaintiffs driveways, and threatening."

A/75198807.3
A/75211339.1

Sean M. O'Brien
October 3, 2012
Page 3

2.   No more than 3 pickets will be on or at the picket line.

3.   The pickets on the picket line will at all times act in a peaceful and nonviolent manner.

4.   The pickets on the picket line will refrain from all unlawful acts, including, but not limited to, preventing egress from or ingress to the xpedx facility, or in any manner delaying egress from or ingress to the xpedx facility.  The pickets may not stop vehicles even temporarily.

5.   The area where the pickets can march or picket, in single file, is limited to the side of Route 38 at the beginning of the roadway leading to the facility.

6.   Local 25 and its members will refrain from any unlawful acts or conduct directed at xpedx property, no matter where such property is located.

7.   Local 25 shall identify one or more persons who are to be designated as strike or picket line "captains."  Because this is purported to be a sanctioned strike, Local 25 officers, etc. have supervisory responsibility for the picket line and the conduct of the pickets.  Identifying strike captains will be important so that if there are any issues, xpedx and the Wilmington Police Department will know who has responsibility for the picketing activities.

8.   Any ambulatory picketing will be done in accordance with the law; pickets will not impede ingress or egress from any site and will not attempt to dissuade anyone from entering a site.

Please confirm Local 25's agreement concerning the conduct of the picket line as soon as possible.  Of course, xpedx reserves the right to take any and all action to protect its rights, including seeking appropriate judicial relief.

Very truly yours,

John F. Adkins

/gbo
cc:   Michael R. Begonis, Chief of Police of the
         Wilmington Police Department
      John R. Skelton, Esq.